UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-60690-CV-DIMITROULEAS/SNOW

JUAN M. GOMEZ AND RAFAEL BURGOS-
VAZQUEZ,

        Plaintiffs,

vs.

WASHINGTON MUTUAL BANK,
JPMORGAN CHASE BANK, N.A., DONALD S.
CHIN LOY, SHAPIRO & FISHMAN & GACHE LLP
GRAY ROBINSON AND LEYZA F. BLANCO MARCOS,
CARLOS & MARIA,

        Defendants.
_____/

**DEFENDANTS, GRAY ROBINSON & LEYZA F. BLANCO'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants, GrayRobinson ("GR"), and Leyza F. Blanco ("Blanco")(together Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby file their Motion to Dismiss Plaintiff's Amended Complaint [D.E. 22] filed by Juan M. Gomez ("Gomez") and Rafael Burgos-Vazquez ("Burgos-Vazquez"),  and in support state as follows:

## I.      INTRODUCTION

In a misguided attempt to further delay the service of a writ of possession by requesting that this Court issue an injunction and after the filing of eight bankruptcy proceedings and the passage of over one year since title to the subject property was issued in JPMorgan Chase N.A.'s ("JPMC") name, Plaintiffs filed this suit against Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). As further described below, this suit is one of many efforts by Plaintiffs over a nine

1

year period to hinder and delay JPMC's efforts to foreclose and possess its Property.  During that period, Plaintiffs have embarked on a systematic effort to abuse the court systems in a concerted effort to prevent JPMC from finalizing its eviction process and possessing the Property which it was awarded pursuant to a final state court foreclosure judgment issued on January 5, 2009 in an amount exceeding $10 million.  On more than one occasion, Plaintiffs have sued counsel for JPMC in an effort to continue their vexatious litigation practices and in an effort to hinder and delay JPMC from obtaining possession of its Property.  Plaintiffs' claims in the instant matter once again fail as a matter of law because: (1) Plaintiffs fail to state claims upon which relief can be granted under FDCPA or FCCCPA; (2) FDCPA does not apply and Plaintiffs' claims are time barred; (3) Plaintiffs' FCCPA claims  are barred by the statute of limitations as well as Florida's litigation privilege;  and (4) the Rooker-Feldman doctrine bars Plaintiffs' claims. Consequently, Defendants respectfully request that this Court dismiss Plaintiffs' Amended Complaint with prejudice.

On June 7, 2017, Plaintiffs filed a Motion for Leave to Amend Complaint which was granted on the same day.  The new allegations in Plaintiffs' Amended Complaint, even if true, do not give rise to a cause of action upon which relief can be granted.[1]

## II.      PROCEDURAL HISTORY AND BACKGROUND

### A.      The Foreclosure Action and Various Appeals

1.      On July 29, 2008, Washington Mutual ("WaMu"), predecessor in interest to JPMC filed a foreclosure action seeking to foreclose its interest in a certain mortgage upon real property located at 900 South North Lake Drive, Hollywood, FL 33019 (the "Property") securing

---

[1] The undersigned disputes the added allegations as they are untrue to the extent they refer to conversations with the undersigned.  Furthermore, the substance of conversations between the undersigned and counsel for Plaintiff Gomez referenced in the Amended Complaint were in the nature of privileged/settlement discussions and as such are inadmissible. Notwithstanding, even taken as true, the allegations in the Amended Complaint fail to state a claim upon which relief may be granted.

an indebtedness due from Juan M. Gomez in the original principal amount of $10 million (the "Loan").

2.       On September 25, 2008, WaMu failed, and JPMC acquired certain WaMu assets, including the Loan.

3.       A Final Summary Judgment of Foreclosure ("Foreclosure Judgment") was entered in favor of JPMC as successor to WaMu and against Gomez on January 5, 2009 in the foreclosure action styled as *JP Morgan Chase Bank, National Association as successor to Washington Mutual Bank*, Case # 2008 CA 034579 (14) (hereinafter "the State Court Action").

4.       Gomez filed three Notices of Appeal on June 8, 2015, on May 27, 2016, and November 10, 2016, respectively, during the course of the State Court Action. The initial appeal docketed on June 9, 2015 with the Fourth District Court of Appeal ("Initial Appeal") was *sua sponte* dismissed on July 15, 2015, for failure to comply with Court orders and subsequently reinstated.  On March 23, 2016, the Fourth District Court of Appeal dismissed the Initial Appeal in a per curiam opinion[2]. The second appeal docketed on June 2, 2016, with the Fourth District Court of Appeal was affirmed in a per curiam affirmance on November 10, 2016[3].  The appeal docketed with the Fourth District Court of Appeal on  November 21, 2016, is pending.

5.       On May 9, 2016—*more than **seven** years later,* a Certificate of Title was issued to JPMC and recorded as Instrument Number 113725628 on May 31, 2016 in the public records of the Clerk of the Circuit Court in and for Broward County, Florida.

B.       **The Multiple Bankruptcy Filings by Gomez Individually**

6.       Prior to the filing of this Amended Complaint, Gomez instituted six previous bankruptcy filings in his individual name and caused the filing of two additional bankruptcy

---

[2] On the same date, the Fourth District Court of Appeal entered an Order Granting Attorney Fees in favor of JPMC.
[3] On November 10, 2016, the Fourth District Court of Appeal entered an Order Granting Attorney Fees in favor of JPMC.

filings of affiliated entities all in an effort to hinder and delay JPMC's ability to enforce it rights and remedies against the Property.

### i.      In re *Juan M. Gomez, Case No.: 09-12356-RBR* ("First Bankruptcy Proceeding")

7.      On February 11, 2009, Gomez filed the First Bankruptcy Proceeding as a Chapter 13 case[4] on the eve of the scheduled sale pursuant to the Final Summary Judgment of Foreclosure. Gomez did so *pro se* and failed to complete schedules, Chapter 13 Plan and other required documents. The First Bankruptcy Proceeding was dismissed on March 6, 2009, almost one month after the filing date. *See* Order Dismissing Case [D.E. 12] entered in the First Bankruptcy Proceeding. After obtaining new counsel and seeking a stay of the rescheduled foreclosure sale in the State Court Action, a foreclosure sale was again scheduled on January 15, 2010.

### ii.      *In re Juan M. Gomez, Case No.: 10-26744-JKO* ("Second Bankruptcy Proceeding")

8.      On June 14, 2010, once again on the eve of the rescheduled foreclosure sale set for June 15, 2010, Gomez filed the Second Bankruptcy Proceeding as a Chapter 13 case. Although Gomez was assisted by counsel, he was once again filed a Chapter 13 for which he was ineligible given the entry of the Final Summary Judgment of Foreclosure. The Second Bankruptcy Proceeding was also dismissed a little over one month later, on July 19, 2010, due to the Gomez's failure to complete schedules, Chapter 13 Plan and other required documents after being granted an extension to file such documents. *See* Order Dismissing Case [D.E. 16] entered in the Second Bankruptcy Proceeding. As a result of the successive bankruptcy filings, Gomez

---

[4] The Debtor filed a Chapter 13 case notwithstanding the entry of the Final Summary Judgment of Foreclosure in the amount of $10,941,041.45 which made him ineligible to be a Debtor under 11 U.S.C. § 109(e).

was successful in delaying the completion of JPMC's foreclosure sale for approximately one year and four months at this juncture.

### iii. *In re Juan M. Gomez, Case No.: 12-19803-RBR ("Third Bankruptcy Proceeding")*

9.      On April 23, 2012, yet again on the eve of the rescheduled foreclosure sale scheduled for April 24, 2012, Gomez filed the Third Bankruptcy Proceeding as a Chapter 13 case with the assistance of counsel.  The case was dismissed on July 26, 2012 for failure to make pre-confirmation plan payments required under the proposed Chapter 13 plan nearly 3 months after its inception.  See Order Dismissing Case for Failure to Make Pre-Confirmation Plan Payments [D.E. 42] in Third Bankruptcy Proceeding.

### iv. *In re Juan M. Gomez, Case No.: 14-23396-JKO ("Fourth Bankruptcy Proceeding")*

10.      On June 11, 2014, on the same date as the rescheduled foreclosure sale, Gomez filed the Fourth Bankruptcy Proceeding on a *pro se* basis as a Chapter 13 case. The Fourth Bankruptcy Proceeding was dismissed approximately two weeks later for failure to submit proof of credit counseling prior to filing.  *See* Order Dismissing Case Without Prejudice for Failure to Obtain Budget and Credit Counseling Prior to Filing and Denying Motion to Extend Time to File Information [D.E. 9] in Fourth Bankruptcy Proceeding.

### v. *In re Juan M. Gomez, Case No.: 14-36329-RBR ("Fifth Bankruptcy Proceeding")*

11.      On December 1, 2014, two days prior to the rescheduled foreclosure sale set for December 3, 2014, Gomez filed the Fifth Bankruptcy Proceeding on a *pro se* basis as a Chapter 13 case.  On December 2, 2014, the bankruptcy court entered an Order for Juan M. Gomez to Show Cause Why this Case Should not be Dismissed With Prejudice for Two Years and Why Two Year In Rem Stay Relief Should Not Be Granted Against Real Property Located at 900 S.

North Lake Dr., Hollywood, Florida, 33019. *See* [D.E. 8] in the Fifth Bankruptcy Proceeding. Upon the Gomez's failure to appear at the scheduled hearing, the bankruptcy court dismissed the case with prejudice for 2 years and granted JPMC in rem relief prospectively for two years to and through December 15, 2016.  *See* [D.E. 8] in the Fifth Bankruptcy Proceeding, Order Dismissing Case With Prejudice and Granting Two Year In Rem Stay Relief Against Real Property Located at 900 S. North Lake Dr. Hollywood Florida 33019 ("In Rem Stay Relief Order").

      **vi.**     ***In re Juan M. Gomez, Case No.: 17-11733-JKO ("Sixth Bankruptcy Proceeding")***

    12.     On February 13, 2017, Gomez filed a Chapter 11 bankruptcy proceeding, the Sixth Bankruptcy Proceeding in an effort to further delay JMPC's rights to obtain an Alias Writ of Possession to obtain possession of the Property.  On or about February 28, 2017, Defendants were engaged by JPMC to represent it in the Sixth Bankruptcy Proceeding.  [D.E. 15 in the Sixth Bankrtupcy Proceeding]. On March 23, 2017, the bankruptcy court entered an Order Granting Expedited Motion of JPMorgan Chase Bank, N.A. for Entry of An Order Granting Stay Relief in the Sixth Bankruptcy Proceeding [D.E. 35] in which the bankruptcy court found that the proceeding was an abuse of the bankruptcy system and part of a scheme of multiple bankruptcy filings intended to delay and hinder JPMC's rights of enforcement against the Property.  On April 5, 2017, the bankruptcy court entered an Order Dismissing Case with Two-Year Prejudice Period [D.E. 42] in the Sixth Bankruptcy Proceeding.

C.      **Bankruptcy Filings by the Gomez's Affiliates**

i.      *In re Dharma Land Trust, Case No.: 14-12180-RBR ("Dharma Trust Bankruptcy")*

13.      On January 30, 2014, subsequent to the entry of the In Rem Stay Relief Order which prevented Gomez from filing another bankruptcy proceeding affecting the Property, Burgos-Vazquez, filed a Chapter 11 proceeding as Trustee for the Dharma Land Trust on a pro se basis.  On February 19, 2014, the Court entered an Order Dismissing Case for Failure of Debtor to Correct Filing Deficiency [D.E. 10].  The schedules filed on January 30, 2014 list no real property on Schedule A and no executory contracts or leases on Schedule G. Notwithstanding, the Dharma Land Trust, through Burgos-Vazquez, as Co-Trustee, recorded a Notice against the Property purporting to claim a lien upon the Property in the amount of $5 million and filed the notice with a Notice of Filing in the State Court Action.  The filing of the Notice of Filing was clearly intended to cause further delay in the State Court Action.

ii.      *In re Rafael Burgos*, Case No.: 14-11568-RAM ("Burgos Bankruptcy")

14.      On January 23, 2014, Burgos-Vazquez a/k/a Rafael Burgos filed a Chapter 13 case before this Court.  Notwithstanding that Burgos did not list any interest in the Property on Schedule A nor did he list any possessory interest in the Property on Schedule G, on June 10, 2014, Burgos-Vazquez caused a Suggestion of Bankruptcy relating to the Burgos Bankruptcy to be filed in the State Court Action in an effort to once again cancel a rescheduled foreclosure sale set on June 11, 2014.  Although the docket in the State Court Action was ultimately noted to properly reflect that Burgos was not a party to the State Court Action, the filing of the Suggestion of Bankruptcy still caused the scheduled foreclosure sale to be cancelled.

### iii. *In re Dharma Foundation, Inc.*, **Case No.: 16-26051-JKO ("Dharma Foundation Bankruptcy")**

15.     On December 1, 2016, The Dharma Foundation, Inc. ("Dharma Foundation") filed a Chapter 11 bankruptcy proceeding through Burgos-Vazquez as Vice President of the Dharma Foundation.   Notwithstanding the fact that JPMC's Certificate of Title to the Property issued on May 9, 2016, the Dharma Foundation, Inc. listed an ownership interest in the Property on its Schedule A/B.  Dharma Foundation, Inc. valued its interest in the Property at $10 million on its schedules filed on December 15, 2016 as Docket Entry 17 and then again valued its interest in the Property at $4,100,00.00 on Docket Entry 27, Page 30.  Similar to many of the other cases described herein above, the Dharma Foundation Bankruptcy was also dismissed on December 16, 2016 for failure to file schedules.

16.     Despite its lack of interest in the Property, the Dharma Foundation caused a Suggestion of Pending Appeal and Pending Bankruptcy to be filed in the State Court Action. While the Dharma Foundation Bankruptcy was dismissed at the time the Suggestion of Pending Appeal and Pending Bankruptcy was filed, it claimed to be a party in interest to the Property.   It is clear that the Dharma Foundation Bankruptcy was intended to further the pattern of abuse and delay as well as to hinder JPMC's rights to possession of the Property even though the Dharma Foundation had no interest in the Property.  As a result of the cancellation of the JPMC's Writ of Possession issued on November 17, 2016, JPMC moved the court in the State Court Action for the issuance of an Alias Writ of Possession on December 20, 2017.  The Motion for Alias Writ of Possession was scheduled for hearing on February 14, 2007.  Prior to the hearing, the Dharma Foundation filed the Suggestion of Pending Appeal and Pending Bankruptcy on February 10, 2017.

17.     On or about February 28, 2017, Defendants were engaged by JPMC to represent it in the Sixth Bankruptcy Proceeding.  [D.E. 29 in the Dharma Foundation Bankruptcy].On March 23, 2017, the bankruptcy court entered an Order Granting Expedited Motion of JPMorgan Chase Bank, N.A. for Entry of An Order Granting Stay Relief [D.E. 40] finding that the Dharma Foundation Bankruptcy was an abuse of the bankruptcy system and part of a scheme intended to delay and hinder JPMC's rights of enforcement against the Property.

### D.     Other Federal and State Court Actions and Removed Actions by Plaintiffs

18.     On February 12, 2012, Gomez filed a state court action styled *Gomez v. JP Morgan Chase Bank et. al.*, Case Number: 12-004759 seeking to Quiet Title on the Property and otherwise attack the Foreclosure Judgement.  On February 26, 2015, the state court entered an Order of Dismissal with Prejudice.

19.     On June 13, 2012, Gomez sought to remove the State Court Action in Case Number 0:12-cv-61186-KMW ("First Removal Action").   On January 8, 2013, this Court entered an Order Remanding Case to State Court; Closing Case [D.E. 28] in the First Removal Action.

20.     On November 18, 2014, Gomez filed Case No.: 0:14-cv-62632-JIC styled *Gomez v. Ryan Bollman (In His Personal Capacity), JP Morgan Chase, N.A* ("First Federal Court Action") seeking damages against JPMC under the FDCPA among other claims. Gomez filed Amended Complaints [D.E. 8] and [D.E. 17] in the First Federal Court Action adding claims under the FCCPA and naming additional defendants.   On April 30, 2015, this Court entered an Order Dismissing Case for Lack of Jurisdiction [D.E. 22] and granting Defendants' Motion to Dismiss [D.E. 11] which on Page 12 of 14 requested that the Amended Complaint be dismissed ***with prejudice.*** In the Order Dismissing Case for Lack of Jurisdiction, the Court agreed with the

defendants, including JPMC, that Gomez's claims, including similar claims under the FDCPA and FCCPA regarding the amounts due to JPMC are foreclosed by the Rooker-Feldman doctrine and this Court lacked jurisdiction to consider them.

21.     On October 10, 2016, Plaintiffs again sought to remove the State Court Action in Case Number 0:16-cv-62401-BB ("Second Removal Action").  On October 14, 2016, this Court entered an Order Remanding Case to State Court [D.E. 10] in the Second Removal Action.

22.     On November 7, 2016, Gomez and Dharma Foundation filed Case No: 9:16-cv-81848-KAM before this Court against JPMC and other defendants ("Second Federal Court Action"). On March 23, 2017, this Court entered an Order Dismissing Case Without Prejudice in the Second Federal Court Action.

23.     On April 19, 2017, Plaintiffs once again filed a Notice of Removal of the State Court Action in Case Number 0:17-cv-60763-BB ("Third Removal Action"). On April 28, 2017, this Court entered an Order Remanding Case to State Court and Closing Case in the Third Removal Action.

24.     On May 4, 2017, Plaintiffs for the fourth time filed a Notice of Removal of the State Court Action in Case Number 0:17-cv-60879-JEM ("Fourth Removal Action").  On June 12, 2017, this Court entered an Order Remanding Case to State Court, striking the Fourth Removal Action and remanding the matter to the State Court in and for Broward County.

**E.     The Instant Action**

25.     On April 7, 2017, Plaintiffs filed this action and attempted to state claims for violations of the FDCPA (Counts I – II), violations of the FCCPA (Count III), and appraisal fraud (Count IV).  Plaintiffs also sought injunctive relief by filing Plaintiffs' Motion for A Preliminary Injunction [D.E. 4].  This is the Third Federal Court Action filed by Gomez and one

of seven proceedings, including the Removal Actions, filed by Gomez before this Court in his effort to attack the Foreclosure Judgment. Gomez has previously raised nearly identical claims under the FDCPA and FCCPA before this Court and those claims were dismissed with prejudice in the First Federal Court Action [D.E. 22].

26.     On April 13, 2017, this Court entered an Order denying Motion for Preliminary Injunction [D.E. 7].

27.     On June 7, 2017, this Court granted Plaintiffs' Motion for Leave to Amend Complaint to permit the filing of the Amended Complaint filed contemporaneously therewith.

28.     The Amended Complaint is nearly identical to the Complaint with the exception of the addition of Paragraphs 37-42, the removal of unintelligible references to "Marcos,Carlos & Maria" [sic] and changing multiple references to the value of the real property at issue from $15,000,000.00 to $10,000,000.00 in various places throughout the Amended Complaint.

### III.     MEMORANDUM OF LAW

### A.     MOTION TO DISMISS STANDARD

In considering a motion to dismiss, a court is required to view the Amended Complaint in the light most favorable to the plaintiff. *Murphy v. F.D.I.C.*, 208 F.3d 959, 962 (11th Cir. 2000); In reviewing the Amended Complaint, the court must accept all of the plaintiff's allegations as true and must draw all reasonable inferences in favor of the plaintiff. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

However, as *Twombly* holds, a complaint should be dismissed for failure to state a claim when the factual allegations in the complaint are not plausible on their face. A plaintiff is obligated to provide the grounds for his entitlement to relief, and this obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." 127 S. Ct. at 1964–65. "Factual allegations must be enough to raise a right to relief above the speculative level . . ." *Id.* at 1965. The facts alleged in the complaint must cross "the line from conceivable to plausible . . ." *Id.* at 1974.

However, "the tenet that a court must accept as true" all of the allegations in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Aschcroft v. Iqbal*, 129 S. Ct. 1949-50 (2009) (emphasis added). The Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (emphasis added). It added: "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief." *Id.* at 1950.

Moreover, "the Court may grant a motion to dismiss when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Robb v. Rahi Real Estate Holdings LLC*, 2011 WL 2149941, at *2 (S.D. Fla. May 23, 2011) (citations omitted). Based on this standard, the Amended Complaint requires dismissal.

**B.    RAFAEL BURGOS-VAZQUEZ TRUSTEE OF THE REMIC TRUST FAILS TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**1.   <u>Amended Complaint Fails to Allege Any Basis for Claims by Burgos-Vazquez</u>**

As a threshold matter, Burgos-Vazquez[5] fails to state any claim upon which relief may be granted. The Amended Complaint is still completely devoid of any allegations which give rise to any claim by Burgos-Vazquez, individually or as Trustee of any trust. Moreover, the Amended

---

[5] The Complaint allegedly brought claims on a *pro se* basis by Burgos-Vazques purporting to be acting as Trustee of the Remic Trust. The Amended Complaint revises the case style to remove the reference to the Remic Trust and purports to make allegations on behalf of Burgos-Vazquez individually yet fails to state any facts which give rise to such claims.

Complaint is further devoid of any allegation forming a basis as to why he has any claims against Defendants. In fact, when describing the Parties to the instant matter in Paragraphs 9 through 19, there is no allegation with even a mention of Burgos-Vazquez either individually or in any capacity. The only allegation relating to Burgos-Vazquez's involvement, individually or as Trustee for the Remic Trust, are contained in Paragraphs 37 through 42 and essentially allege communications by Burgos-Vazquez and Gomez or by Burgos-Vazquez on Gomez's behalf. No allegations relate to Burgos-Vazquez's interest individually or as Trustee of any trust.

**2.  Burgos-Vazquez Was Not a Borrower, Judgment Debtor or Owner of the Property**

Moreover, the Amended Complaint still fails to allege how Burgos-Vazquez, either individually or as Trustee of the Remic Trust, either owned the Property or was party to the judgment or loan documents, including the mortgage, which allegedly give rise to or even relate to the allegations of the Amended Complaint.  In no instance does the Amended Complaint allege that Burgos-Vazquez owes any debt to any of the Defendants or that Defendants even engaged in any debt collection against Burgos-Vazquez.  The allegations that relate to Burgos-Vazquez simply relate to communications by Burgos-Vazquez with select defendants on behalf or with Gomez which, even if accepted as true, do not give rise to any cause of action by Burgos-Vazquez against Defendants.

**3.  Allegations Relating to Burgos-Vazquez are Non-Sensical**

There are few allegations in the Amended Complaint which even reference Burgos-Vazquez.  Paragraph 27 alleges that Defendants attempted to remove Plaintiffs from the Property in an attempt to collect on a judgment.  However, such allegations are non-sensical given: i) the issuance of a Certificate of Title in favor of JPMC on May 9, 2016, resulting in  JPMC's ownership of the Property and ii) Burgos-Vazquez is not a judgment debtor.

Consequently, the service of a Writ of Possession is not an attempt to collect a judgment but rather the enforcement of legal rights to possess real property which is owned by JPMC and is being unlawfully possessed by Plaintiffs.   Similarly the allegations relating to Burgos-Vazquez' involvement in speaking with certain defendants, real estate professionals and discovering the value of the Property and/or alleged appraisal fraud in Paragraphs 59-60 and 72 do not give rise to any allegations that state any claim whatsoever against Defendants.  For these reasons, all claims by Burgos-Vazquez must be dismissed with prejudice.

### 4.   <u>Conversations Between Counsel Do Not Give Rise to Any Cognizable Claims</u>

Moreover, the added allegations contained in Paragraph 41 relating to conversations between Blanco and counsel for Gomez, Joel S. Wadsworth [sic], were settlement discussions and are likely inadmissible.  Notwithstanding, allegations that Blanco promised to appraise the property and offer a short sale and short payoff amount, while untrue, still do not give rise to a cognizable claim of any kind by Burgos-Vazquez who is not the Borrower, never owned the Property and was never the subject of any collection action by Defendants or their client.

### C.   **GOMEZ FAILS TO STATE A CAUSE OF ACTION FOR WHICH RELIEF CAN BE GRANTED.**

Gomez also fails to state a cause of action for which relief can be granted, and under Fed.R.Civ.P. Rule 12(b)(6), the Amended Complaint must be dismissed.  Federal Rule of Civil procedure 12(b)(6) requires dismissal where a claimant has failed to state a claim upon which relief can be granted.  Dismissal is appropriate when "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action*." Marshall County Bd. of Educ. V. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).  A complaint in which the claimant fails to state a claim upon which relief can be granted will result in dismissal pursuant to Rule 12(b)(6). *Daewoo Motor Am., Inc. v. General Motors Corp.*, 459 F .3d 1249,

1271 (11th Cir.2006); *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir.2006); *Davila v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir.2003).

### 1.   **Amended Complaint Does Not Properly Allege Conduct by Each Defendant**

For instance, the Amended Complaint is devoid of allegations identifying what each Defendant allegedly did, did not do, said, or did not say to support any claim for relief. On its face, such unclear pleading fails to comport with Rule 8 and certainly does not comport with Rule 9(b). *See Bill Buck Chevrolet, Inc. v. GTE Florida, Inc.*, 54 F. Supp. 2d 1127, 1136 (M.D. Fla. 1998) ("[P]leading a predicate act with specificity requires a claimant to answer the familiar questions of 'who, where, when, how and why.'"); *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1381 (11th Cir. 1997) (Where multiple defendants are involved, a plaintiff must further particularize the role and acts of each defendant with respect to each supposed instance of fraud.); *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 949 (11th Cir. 1997) (A plaintiff must come forward with specific facts substantiating the existence of scienter on the part of each defendant.).

### 2.   **Causes of Action Are Unintelligible**

Additionally, none of Plaintiffs' causes of action are legally viable, appropriately pled, or factually correlated to the statutes upon which they are purportedly based.  Nowhere in the Amended Complaint does Gomez state a valid cause of action against Defendants who became involved in the case during the course of their representation of JPMC in connection with the Sixth Bankruptcy Proceeding and the Dharma Foundation Bankruptcy on or about February 28, 2017. Although not entirely clear from the Amended Complaint, the Plaintiffs seem to be attempting to use FDCPA and FCCPA as a basis to make arguments relating to undisclosed and/or illegal, underwriting fees, which do not relate in any way to either the FDCPA or FCCPA

especially given the fact that the Foreclosure Judgment adjudicated the amounts due to JPMC. Gomez has clearly misinterpreted the provisions and intent of the FDCPA and FCCPA and simply has no cause of action under either.

### 3.   Amended Complaint Lacks References to Specific Written or Oral Communication by Defendants to Plaintiffs

Further still, there are no allegations made in the Amended Complaint that would give rise to any cause of action against Defendants.  The Amended Complaint is devoid of any reference to a specific written or oral communication by Defendants to Plaintiffs which would give rise to a violation of FDCPA or FCCPA.  Paragraph 32 alleges that Plaintiffs received one or more documents from each Defendant alleging the amounts owed were over $10 million yet fails to identify or refer to any such documents.  Such allegation is not a basis for a cause of action under FDCPA, FCCPA or any other theory given that the Foreclosure Judgment is, on its face, over $10 million and has been appealed and affirmed three separate times by the Fourth District Court of Appeal in Florida.

### 4.   Amended Complaint Includes Contradictory Allegations

For example, in Paragraph 37, Plaintiffs allege that during the last twelve months, Blanco refused to respond to Plaintiffs' request for payoff, ignored their requests for modifications and short sales and engaged in deception.  Refusing to respond to requests for payoffs, modifications or short sales do not give rise to the claims brought under FDCPA or FCCPA.  Furthermore, Plaintiffs contradict themselves in Paragraph 40 alleging that Defendants violated the FDCPA and FCCPA by providing conflicting payoff amounts, adding illegal amounts to the balance yet fail to provide any detail in respect to any such conflicting payoffs. Given the fact that a judgment in JPMC's favor entered on January 5, 2009 and JPMC obtained title to the Property on May 9, 2016, such allegations do not give rise to a valid cause of action either under FDCPA

or FCCPA.   As such, there is no cause of action against Defendants, and the Amended Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**5.   <u>Because JPMC Owns the Property A Written Purchase and Sale Contract is Required to Bring Any Cause of Action</u>**

Furthermore, Plaintiffs added Paragraphs 41[6] and 42 to the Amended Complaint both which attempt to describe the basis for a cause of action but fail to do so.   Plaintiffs fail to acknowledge that the Property is ***owned*** by JPMC. Thus, any discussions regarding the disposition of such Property is in the nature of negotiations for the sale of real property rather than a short sale or short payoff amount such references are used by Plaintiffs.   Paragraph 41 admits that Defendants did not put any offer or acceptance of an offer in writing.

To the extent such offer or acceptance is in the nature of a contract for the sale of real property, Florida's Statute of Frauds under Florida Statutes § 725.01 provides that no action shall be brought upon any contract for the sale of lands unless the agreement or promise upon which such action shall be brought is in writing and signed by the party to be charged therewith.

In this instance, the Property was owned by JPMC at all times material to the allegations contained therein.   Absent a written contract for the purchase and sale of the Property signed by JPMC, no action shall be brought under Florida law as it is barred by the Statute of Frauds. Thus, Gomez states no cognizable action in the Amended Complaint based upon oral communications relating to the sale of the Property in any amount certain.   As a result, the Amended Complaint must be dismissed.

---

[6] At no time did Defendants represent Washington Mutual as alleged in Paragraph 41.   Defendants involvement in this matter began on or about February, 2017 and at all material times, Defendants represented JPMC, the owner of the Property.

### D.       FAILURE TO STATE A CLAIM UNDER FDCPA

By its terms, the FDCPA does not apply to any actions taken by Defendants for various reasons: 1) the alleged actions by Defendants are not actions to collect a "debt" as defined by the FDCPA; 2) Defendants principal purpose was not debt collection; 3) the alleged action is time barred.

### 1.       Actions for Possession of the Property Post-Judgment are not Actions "on a debt"

Count I of the Amended Complaint purports to state a cause of action for alleged violations of the FDCPA.   However, in taking action to enforce JPMC's rights to possession of the Property, Defendants actions are not actions to collect a "debt" as defined under 15 U.S.C. 1692(a)(5).

The definition of "debt" under 15 U.S.C. 1692(a)(5) means:

> "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

Since the issuance of the Certificate of Title for the Property to JPMC on May 9, 2016, through the filing of the Amended Complaint, Defendants have not taken action to collect money from Gomez but rather, have taken actions on behalf of JPMC to enforce its legal right to possess the Property.   In *Aluia v. Dyck-O'Neal, Inc.*, 205 So. 3d 768, 773 (Fla. 2d DCA 2016), the Second District Court of Appeal in Florida held that a final judgment of foreclosure is not "an obligation ... of a consumer to pay money," nor does it arise from a business dealing or consensual obligation. The final judgment of foreclosure is a foreclosure decree and judgment, establishing an obligation independent of the mortgage and note. *Id.* at 775.   Such obligation is

not a "debt" as defined in the FDCPA.  *Id.* at 773.[7]  Actions taken by Defendants since the issuance of the Certificate of Title on May 9, 2016, including seeking relief from the automatic stay in the Sixth Bankruptcy Proceeding and the Dharma Foundation Bankruptcy to obtain and serve a Writ of Possession and finalize an eviction proceeding to enforce JPMC's rights to legally possess the Property do not arise from a "debt" but rather from rights derived from the issuance of a Certificate of Title in favor of JPMC. Thus the FDCPA is inapplicable to actions taken by Defendants to possess the Property.

### 2.      Defendants are not "debt collectors"

FDCPA applies only to actions taken by "debt collectors" as that term is defined by 15 U.S.C. § 1692a.  Plaintiffs allege in a conclusory fashion that Defendants are so-called "debt collector" [D.E. 1, ¶ 15-16].  Plaintiffs fail to allege that Defendants' principal purpose is to collect debts owed or due to another.  Thus the Amended Complaint fails to state a claim under the FDCPA upon which relief can be granted.

### 3.      Plaintiffs' Claims under FDCPA are time barred

The FDCPA's statute of limitations bars Count I of the Amended Complaint.  Plaintiffs allege "Defendant" violated the FDCPA by on "numerous occasions by mail and phone…, [by threatening] foreclosure as a potential remedy it could pursue if Plaintiff was deemed in default". [D.E. 1, ¶ 108]. Although the Amended Complaint fails to state the date of any such occasions, the State Court Action was filed on July 29, 2008.  Thus, any communications "threatening foreclosure as a potential remedy" would have logically taken place prior to the institution of the State Court Action, that is prior to 2008, and not within the statute of limitations to sustain an action under the FDCPA, since the FDCPA has a one-year statute of limitations. 15 U.S.C. §

---

[7] *But see, Rojas v Law Offices of Daniel C. Consuegra, P.L.*, 142 F. Supp. 3d 1206, 1212 (M.D. Fla 2015) (finding that consumer's obligation under promissory note survived reduction to judgment in mortgage foreclosure action and remained a "debt" under FDCPA).

1692k(d); *Zenon v. Palisades Collection, LLC*, 2008 WL 506231, at *1 (M.D. Fla. Feb. 21, 2008) (dismissing FCCPA and FDCPA claims).  Plaintiff filed the Complaint on April 7, 2017. Thus, any conduct alleged to be in violation of the FDCPA which occurred prior to April 7, 2016 is time barred. Although Count I fails to specify dates for specific alleged violations of the FDCPA, conduct relating to the alleged amount due must be outside the one year statute of limitations since the amount due was adjudicated in the Foreclosure Judgment entered on January 5, 2009. Thus, Count I should be dismissed with prejudice.  *See Leblanc v. Advance Credit Corp.*, No. 8:06CV747T27EAJ, 2007 WL 141173 at *3 (M.D. Fla. Jan. 16, 2007); *Dyer*, 2015 WL 3650925 at *3-*4 (dismissing time barred FDCPA claim with prejudice); *Perez v. Bureaus Investment Group No. II, LLC*, No. 1:09-CV-20784, 2009 WL 1973476 at *2 (S.D. Fla. July 8, 2009). Plaintiffs fail to specify facts which give rise to such allegations because Plaintiffs lack any factual basis to do so.

Plaintiffs admit that Defendants "never received any further contact" from Defendants after April 26, 2017 and fail to identify any prior contact which gives rise to a claim under FDCPA.  Consequently, Plaintiff's cause of action under the FDCPA must be dismissed.

### E.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FCCPA.

Likewise, claims arising under the FCCPA must be commenced within two years after the date of the alleged violation.  Fla. Stat. § 559.77(4).   Accordingly, any alleged FCCPA violation conduct occurring prior to April 7, 2015 is also time-barred and any conduct relating to the amounts due must have occurred prior to the adjudication thereof upon the entry of the Foreclosure Judgment on January 5, 2009.

Plaintiffs based their FCCPA claims upon legal action taken to foreclose on the Property at more than three times the amount actually owed.  [D.E. 1 at ¶ 126].   The amount which was

the subject of the Foreclosure Judgment was at issue prior to its entry on January 5, 2009, the date of the entry of the Foreclosure Judgment. Any alleged legal action to foreclose on the Property occurred outside the statute of limitations and is barred under the FCCPA since the Foreclosure Judgment was entered in 2009 and any alleged conduct prior to April 7, 2015 would be barred under the FCCPA's statute of limitations. Similarly, Plaintiffs fail to specify the basis for any allegations under the FCCPA because Plaintiffs lack a factual basis to do so.

Moreover, the litigation privilege protects Defendant's actions in connection with the pending legal action. Florida's litigation privilege provides immunity for any act occurring during a legal proceeding if said act is related to the proceeding. *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007). The limited facts alleged as a basis for the allegations in the Amended Complaint were unquestionably related to litigation in the Foreclosure Action, the Sixth Bankruptcy Proceeding and the Dharma Foundation Bankruptcy, specifically those referenced in Paragraphs 41 and 42. Accordingly, the litigation privilege bars Plaintiffs' FCCPA claims. *Id. See also*, *Dyer v. Choice Legal Group P.A.*, No. 5:15-cv-69-Oc-30PRL, 2015 WL 3650925 at *3-*4 (M.D. Fla. June 11, 2015) ("The filing and maintenance of a legal action, such as an action in foreclosure, is precisely the kind of activity protected by Florida's litigation privilege."); *Hinkle v. Asset Acceptance*, LLC, No. 09-60928-CIV, 2010 WL 298396 at *1 (S.D. Fla. Jan. 20, 2010) (holding that litigation privilege barred FCCPA claim premised upon filing of collection action); *Perez* 2009 WL 1973476 at *3 (same).

## F.   PLAINTIFFS' CLAIMS ARE BARRED BY THE *ROOKER-FELDMAN* DOCTRINE

Counts I and II of Plaintiff's Amended Complaint are both premised, in part, upon Gomez's claims that he paid "undisclosed underwriting fees" and was charged over $300,000.00 in alleged "illegal" and "predatory" fees and "inflated the amount due." Specifically, in Count I,

Plaintiffs assert that Defendants have "attempted to impose illegal charges and has [*sic*] inflated the amount due" and have engaged in false representation of the character, amount or legal status of a debt. [D.E. 1, ¶ 106, 109]  Similarly, in support of Count II, Plaintiffs assert that Defendants violated the FDCPA by attempting to collect fees and illegal amounts added to the balance not expressly authorized by an agreement creating the debt or permitted by law.  [D.E. 1, ¶ 117].  In support of Count III under the FCCPA, Plaintiffs similarly allege that Defendants provided inflated amounts or amounts that directly conflict with their judgment collection actions despite conflicting amounts [D.E. 1, ¶ 125].

The Amended Complaint is an impermissible attack on a Florida state court's final foreclosure judgment entered against Gomez.  Such an attack is barred by the "*Rooker-Feldman* doctrine," which arises from the Supreme Court decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

Florida's federal courts have consistently held that *Rooker-Feldman* applies where, as here, a plaintiff seeks to challenge a state-court foreclosure judgment. *See, e.g., Figueroa v. Merscorp, Inc.*, 766 F. Supp. 2d 1305, 1315-1326 (S.D. Fla. 2011) (Altonaga, J.) (applying *Rooker-Feldman* to RICO claims inextricably intertwined with prior Florida state-court foreclosure judgment and dismissing for lack of subject matter jurisdiction); *see also, Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132-33 (11th Cir. 2005) (affirming dismissal of TILA, FDCPA, and ECOA claims under *Rooker-Feldman* because these claims would essentially review a state foreclosure action.

The Eleventh Circuit analyzes two factors to determine whether *Rooker-Feldman* bars a federal challenge to a state court judgment: (1) "whether the state court rendered judgment before the district court proceedings commenced"; and (2) "whether plaintiff is a state-court

loser who is complaining of injuries caused by state-court judgments." *Cormier v. Horkan*, 397 F. App'x 550, 552-53 (11th Cir. 2010) (internal citations omitted).

This Court has previously dismissed claims brought by Gomez under the FDCPA and FCCPA against JPMC and other defendants with prejudice in the First Federal Court Action. *See* [D.E. 22] in First Federal Court Action.  Similarly, in this case, the Amended Complaint itself and the Foreclosure Judgment, undeniably prove that both of the elements of the *Rooker-Feldman* doctrine are similarly satisfied here warranting dismissal of this action. This type of direct attack on a state court judgment and the issues decided therein is barred by the *Rooker-Feldman* doctrine. *See Nivia v. Nation Star Mortgage, LLC*, 620 F. App'x 822, 824–25 (11th Cir. 2015) (affirming district court's dismissal citing to lack of subject matter jurisdiction to review state court's prior decision on FDUTPA claim); *Ware v. Polk County Bd. of Cnty. Comm'rs*, 394 F. App'x 606, 607 (11th Cir. 2010) (barring plaintiff's § 1983 claims pertaining to the foreclosure judgment, as the plaintiff "effectively ask[s] the district court to review and reject the state court's judgment"); *Figueroa v. MERSCORP, Inc.*, 766 F. Supp. 2d 1305, 1323–24 (S.D. Fla. 2011) ("The only way Plaintiff[s] . . . could have been 'damaged' by the loss or 'illegal divestment' of their homes is if those foreclosures were wrongful. . . . But by entering judgments of foreclosure, the Florida state courts determined the foreclosures were proper. These state courts exercised their authority over state law and found the foreclosing parties satisfied Florida's procedural safeguards."), aff'd 477 F. App'x 558 (11th Cir. 2012). The *Rooker–Feldman* "doctrine bars claims that were actually raised in the state court and those 'inextricably intertwined' with that state judgment." *Blum v. JPMorgan Chase & Co.*, 2015 WL 3770927, at *1 (S.D. Fla. June 16, 2015) (internal quotation omitted).

In a case concerning an attack on a foreclosure judgment, Judge Rosenbaum of the Southern District of Florida noted that "[t]he Eleventh Circuit and many federal district courts in Florida have applied the *Rooker–Feldman* doctrine to dismiss actions in which plaintiffs sought to challenge state-court foreclosure judgments." *Andre v. JPMorgan Chase Bank*, *N.A.*, 2015 WL 3650202, at *1 (S.D. Fla. June 1, 2015). In support of that conclusion, Judge Rosenbaum noted the following cases supporting this contention:

> *Parker v. Potter*, 368 F. App'x 945, 947–48 (11th Cir. 2010) (applying *Rooker–Feldman* to a federal TILA claim seeking rescission of mortgage transaction following entry of final foreclosure judgment in state court); *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892–93 (11th Cir. 2008) (holding that appellants' federal TILA claims were inextricably intertwined with a state-court foreclosure judgment and therefore barred by *Rooker–Feldman*); *Harper v. Chase Manhattan Bank*, 138 F. App'x 130, 132–33 (11th Cir. 2005) (dismissing federal TILA, FDCPA, and Equal Credit Opportunity Act claims under *Rooker–Feldman* because they were inextricably intertwined with a state-court foreclosure proceeding); *Aboyade–Cole Bey v. BankAtlantic*, 2010 WL 3069102, at *2 (M.D. Fla. Aug. 2, 2010) (concluding court lacked jurisdiction to hear plaintiff's case under *Rooker–Feldman* because the case was, "at its core," an attempt to revisit a state-court foreclosure judgment); *Distant v. Bayview Loan Servicing, LLC*, 2010 WL 1249129, at *3 (S.D. Fla. Mar. 25, 2010) ("Although plead as conspiracy claims . . . Plaintiff is clearly asking this Court to invalidate the state court action by ruling that the state court foreclosure judgment is somehow void. Under the *Rooker–Feldman* doctrine, [defendant] is correct that this Court lacks subject matter jurisdiction, as Plaintiff seeks a de facto appeal of a previously litigated state court matter."); *Figuero*, 766 F. Supp. 2d at 1320 (collecting and discussing the cases cited above).

*Andre*, 2015 WL 3650202, at *1. This case is nothing more than a thinly-veiled attack on the Foreclosure Judgment entered in the State Court Action by a Florida state court in an attempt to hinder JPMC's possession of the Property, and therefore, this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

The Court has an independent duty to ensure that a case or controversy exists and that it has subject matter jurisdiction over the claims presented before ruling on the merits of a claim. In certain circumstances, a federal court must decline or postpone the exercise of jurisdiction by

deferring to the courts of the several states. *See*, *e.g.*, *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Feldman*"); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); *Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Co.*, 319 U.S.315 (1943); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Rooker v.Fid. Trust Co.*, 263 U.S. 413 (1923) ("*Rooker*").   Subject matter jurisdiction is a question of law. *See Pavelich v. McCormick et al. LLP (In re Pavelich)*, 229 B.R. 777, 779 (9th Cir. BAP 1999).

"It is well-settled that a federal district court lacks jurisdiction to review, reverse, or invalidate a final state court decision."  *Dale v. Moore*, 121 F.3d 624, 626 (11th Cir. 1997); *see also, Harper v. Chase Manhattan Bank*, 138 F. App'x. 130, 132 (11th Cir. 2005).  In fact, lower federal courts lack subject matter jurisdiction over claims that were not directly litigated in state courts, but were "inextricably intertwined" with a previous state court adjudication.  *Id.*

A matter is "inextricably intertwined" where the desired federal relief would require either (1) a determination that the state court was wrong; or (2) action by the federal court that would render the state court's judgment ineffectual (i.e., would allow the federal plaintiff to undo or prevent enforcement of the state court's order). *Velardo v. Fremont Inv. & Loan,* 298 F. App'x 890, 892–93 (11th Cir. 2008).

After a split amongst the circuits on the application of the *Rooker-Feldman* doctrine, the United States Supreme Court explained that *Rooker-Feldman* is properly applied when a party to a state-court action: (1) complains of injuries caused by a state court judgment rendered before the federal district court proceedings are commenced; or (2) invites district court review and rejection of those judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

> If the decision was wrong, that did not make the judgment void, but merely left it
> open to reversal or modification in an appropriate and timely appellate
> proceeding.

*Rooker,* 263 U.S. at 647. Under Florida law, even if the Foreclosure Judgment was in error, it was, at best voidable. Several appeals were taken and all affirmed the Foreclosure Judgment.

This Court does not have jurisdiction to invalidate the Foreclosure Judgment and render the relief requested by Plaintiffs in respect to the amount owed to JPMC because the only possible relief which can be granted by this Court requires the overturning of the Foreclosure Judgment.  In *Harper v. Chase Manhattan Bank*, 138 F. App'x. 130 (11th Cir. 2005), a mortgagor brought suit against a bank following a judicial foreclosure, alleging that the Bank had engaged in predatory lending practices in violation of TILA, ECOA, and FDCPA.  The United States District Court for the Northern District of Florida granted summary judgment for the bank and the mortgagor appealed. The Court of Appeals held that the mortgagor's suit was barred by the state court foreclosure pursuant to the *Rooker-Feldman* doctrine, noting that the mortgagor's claims were inextricably intertwined with those in the state court action.

This matter is precluded by the *Rooker-Feldman* doctrine.  The Plaintiffs' claims made in this matter are all inextricably intertwined with the State Court Case and were amount of the debt was adjudicated therein.  The Plaintiffs through this action are, once again, attempting to re-litigate issues that were raised or should have been raised in the State Court Case and that have been raised and previously dismissed by this Court.  As such, this matter should be dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

Given the Plaintiffs' history of the institution of vexatious litigation further described herein above in the effort to avoid the effect of the Foreclosure Judgment and Certificate of Title,

coupled with the failure by Plaintiffs to state cognizable claims of any kind in the Amended Complaint, Defendants requests that this Court enter an order dismissing Plaintiff's claims with prejudice and request any further relief the Court deems just and proper under the circumstances.

WHEREFORE, Defendants, Gray Robinson and Leyza F. Blanco respectfully requests this Court to enter an Order dismissing the Amended Complaint with prejudice and granting any further relief this Court deems just and proper.

Respectfully submitted this 21st day of June, 2017.

/s/ Leyza F. Blanco
**Leyza F. Blanco, Esq.**
Florida Bar No. 104639
**GRAYROBINSON, P.A.**
333 S.E. 2nd Avenue, Suite 3200
Miami, Florida  33131
Telephone:      305-416-6880
Facsimile:      305-416-6965
*Attorneys for Defendants, Leyza F. Blanco and GrayRobinson, P.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 21, 2017 the foregoing document was filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/Leyza F. Blanco

## SERVICE LIST

Juan M. Gomez
P.O. Box 221967
Hollywood, FL 33022
*(Via U.S. First Class Mail)*

Rafael Burgos-Vazquez
1801 Polk Street, Suite 221967
Hollywood, FL 33019
*(Via U.S. First Class Mail)*

Rafael Burgoz-Vazquez
P.O. Box 221967
Hollywood, FL 33022
*(Via U.S. First Class Mail)*

Donald S. Chin Loy
18021 SW 91st Avenue
Miami, FL 33157
*(Via U.S. First Class Mail)*

Shapiro & Fishman & Gache, LLP
c/o Ileen Jill Cantor
Shapiro, Fishman & Gache, LLP
2424 North Federal Highway, Suite 360
Boca Raton, FL 33431
*(Via CM/ECF)*